IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID W. JOHNSON                                                                                            PLAINTIFF

v.                                       CASE NO.         12-2053

CAROLYN W. COLVIN, Commissioner
of Social Security Administration                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I. Procedural Background:**

The plaintiff filed his application for SSI on October 19, 2009, alleging an onset date of December 1, 2006, due to plaintiff's Crohn's disease, avascular necrosis and depression. Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on August 17, 2010. At the time of the administrative hearing, plaintiff was 39 years of age and possessed a High School education. The Plaintiff had past relevant work ("PRW") experience as a Car Salesman (T. 129).

On November 23, 2010, the Administrative Law Judge ("ALJ") concluded that, although

severe, plaintiff's Crohn's disease, avascular necrosis, and depression did not meet or equal any Appendix 1 listing. T. 14. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional restrictions. T. 15. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as charge account clerk, production assembler, and compact assembler. T. 20.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. RFC**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth

Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

The ALJ determined the Plaintiff had the "residual functional capacity to lift and carry 10 pounds occasionally and less than 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for at least 2 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch, and crawl. The claimant can occasionally reach overhead with his left upper extremity. The claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, the general public, and usual work situations." (T. 15-16).

1.  **Failure to Develop the Record**

The Plaintiff first contends that the ALJ failed to fully and fairly develop the record. (ECF No. 10, p. 8). The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*,

47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exist "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)).  The ALJ is not required to act as Plaintiff's counsel. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994) (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").

### a. APN Pham-Russell

The ALJ sent the Plaintiff for a consultive physical examination which was conducted by APN Pham-Russell on November 3, 2009.  APN Pham-Russell conducted a series of subjective test and recorded the results of those test and her observations of the Plaintiff. (T. 244-247).  She also ordered x-rays which were completed on the same day, and while avascular necrosis was felt to be present, there was no fracturing noted. (T. 248).  The Plaintiff has objected to the consultive evaluation being conducted by an APN and not the doctor.

The ALJ stated that "Dr. Frisbie opined that the claimant had moderate lifting, carrying, prolonged standing and sitting limitations. (Exhibit 6F). The undersigned accords great weight to the opinion of Dr. Frisbie regarding her medical finding as she had the opportunity to examine the claimant and offered her opinion based upon the examination signs and findings. Furthermore, the undersigned has considered Dr. Frisbie's findings in determining the claimant's residual functional capacity."  The report actually states that the "patient has medical issues that are not adequately treated. He has moderate lifting, carrying, prolonged

standing and sitting limitations." (T. 247).

The point of fact is that Dr. Frisbie never examined the Plaintiff but the examination was conducted exclusively by APN Pham-Russell.  The court has ruled many times in the past that it has not found any error in the ALJ's reliance upon the APN's findings concerning subjective test that are administered because they can be considered an Other Source.  In this case, however, the ALJ is putting "great weight" on the findings by a medical doctor that never saw the patient and findings that in no way address the impact of his Crohn's Disease.  The court also has no idea what APN Pham-Russell or the doctor meant by "medical issues that are not adequately treated" but regardless, Dr. Frisbie's opinion should be granted no greater weight than a non-examining consultive examination.

    **b. Psychological Exam**

It appears that the Plaintiff was seen by Dr. Max Baker, M.D. several times in 2005 for anxiety and panic attacks. (T. 197-203).  Some portions of the records are illegible but Dr. Baker's diagnosis was consistently "300.01" (T. 201, 202) which is Panic Disorder without Agoraphobia. (See DSM-IV-TR, p. 440).  Based upon the Plaintiff's past treatment and his allegation of depression in his application (T. 149) the Plaintiff was sent to see Dr. K. Kralik for a consultive psychological exam which was conducted on March 10, 2010. (T. 264).  Dr. Kralik noted that the Plaintiff arrived late for his appointment and departed within 30 minutes of beginning the exam. (Id.).  The Plaintiff indicated that he had no past mental health treatment but Dr. Kralik makes reference to the notes she had from Dr. Baker. (T. 265).  The Plaintiff ended his examination because he alleged he did not feel well (Id.) but Dr. Kralik noted that it appeared the Plaintiff was "more angry, irritable, impatient, and uncooperative" than physically ill. (T. 266).

Dr. Kralik noted that due "to lack of cooperation and early termination" she was not able to give an opinion concerning the effects of identified mental impairments on adaptive functioning (T. 268) and she noted that the validity of the assessment was in question because his lack of cooperation. (T. 269).

The Plaintiff argues that the ALJ committed error because he "should have sought another consultative psychological eva1uation when Plaintiff could not complete the one with Dr. Kralik" (T. 33-34, 192), the court, however, notes that the Plaintiff exhibited the same attitude during his initial application for benefits in October 2009.  The interviewer noted as follows:

> " CLAIMANT WAS VERY RUDE AND UPSET THAT I WAS 10 MINUTES LATE FOR HIS APPOINTMENT. THIS WAS DUE TO SHORTAGE IN EMPLOYEES. HE CHEWED ME OUT AND TOLD ME HE WAS NOT GOING TO GIVE ME ANY INFORMATION BECAUSE WE ALREADY HAD IT FROM HIS LAST CLAIM. I TOLD HIM THIS AFFECT HIS CLAIM AND HE STATED "HE DIDN'T CARE" SO I LOADED WHAT I COULD GET FROM THE LAST CLAIM BUT THERE WAS NO GATHERING OF NEW INFORMATION. HE WASN'T GOING TO CHANGE HIS ATTITUDE.

There is no indication that the Plaintiff would be any more cooperative if the ALJ had scheduled an additional consultive psychological exam.

Notwithstanding the Plaintiff's uncooperative behavior Dr. Kralik prepared what information she could and the ALJ had a Psychiatric Review Technique (T. 277) and a Mental RFC (T. 273-276) prepared by Winston Brown, M.D.

**c.  Additional Physical Examination:**

The Plaintiff  raised the issue concerning APN Pham-Russell's lack of knowledge of Crohn's disease. (ECF No. 10, p. 9).  At the hearing before the ALJ Plaintiff's counsel

represented that the APN "did not have a clue what Crohn's was". (T. 26). The Plaintiff argues that the ALJ should have ordered a consultive examinations by a gastroenterologist and the court agrees.

The Plaintiff had a history of Crohn's disease with a terminal ileum resection in approximately 1992 (T. 294) and in July 2002 a colonoscopy showed "active Crohn's disease" (T. 295, 300). "Crohn's disease is a chronic, inflammatory disease of the gastrointestinal tract which produces symptoms such as severe abdominal pain, cramping, nausea, fatigue, diarrhea, and insomnia." *Dix v. Sullivan*, 900 F.2d 135, 136 (8th Cir.1990). According to the Mayo Clinic web site there "is currently no cure for Crohn's disease, and there is no one treatment that works for everyone."  Treatment for Crohn's disease usually involves drug therapy or, in certain cases, surgery. The Plaintiff testified that as a result of the ileum resection "the food, whatever I eat, within an hour it will be through my body so I don't have any energy." (T. 35).

In March 2006 the Plaintiff had a acute flare up of his Crohn's symptoms (T. 210) and saw Dr. Chad Paschall, MD, a Board Certified Gastroenterologist on March 16, 2006.  Dr. Paschall noted that the Plaintiff was not on any medication for his disease at the time (T. 328) and that his weight was 198 pounds (T. 329). Dr. Paschall prescribed Prednisone[1] 40 mg a day then tapering to 10 mg "q week" and scheduled a colonoscopy.  Insurance problem were noted by Dr. Paschall (T. 330) and testified to by the Plaintiff. The colonoscopy was performed on May 4, 2006 and the "colonic mucosa appears slightly irregular, granular some, especially in the transverse and distal colon" but there was no ulceration, bleeding, or stricture. (T. 334). Dr.

---

[1] Prednisone is in a class of drugs called corticosteroids. Prednisone prevents the release of substances in the body that cause inflammation.

Masri, M.D. recommended placing the plaintiff on Asacol [2] and seeing him back in one month. By January 2010 the Plaintiff's weight was noted to be 168 pounds (T. 335) and by August 2010 the Plaintiff testified that his weight was 161 pounds.

The only Physical RFC Assessment was performed by a non-examining consultive physician, Dr. Redd in December 2009. (T. 258). Dr. Redd felt that the Plaintiff could Occasionally lift 20 pounds, Frequently lift 10 pounds; could stand and/or walk and sit for six hours in an 8-hour workday and had no limitations in his ability to push and/or pull. (T. 252). Dr. Redd found NO Postural Limitations (T.. 253); NO Manipulative Limitations (T. 254) and NO Environmental Limitations. (T. 255). Dr. Redd's Assessments was reviewed and affirmed as written by Dr. Crow on February 26, 2010. (T. 262).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). The ALJ, however, only gave "some weight to the opinion expressed by the State Disability Determination Services medical consultants (Exhibit 8F). The medical records contained in this record support a more restrictive physical residual functional capacity as documented." (T. 18). The ALJ did not seek any opinion from Dr. Paschall, who is a Board Certified Gastroenterologist, nor did he seek any consultive exam to be performed by such an expert. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists.

---

[2] Asacol (mesalamine) affects a substance in the body that causes inflammation, tissue damage, and diarrhea. Asacol is used to treat ulcerative colitis, proctitis, and proctosigmoiditis.

See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.  The record is devoid of just what impact the Plaintiff's Crohn's Disease would have on his ability to perform gainful employment.

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994).  That duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. Id.; *Smith v. Barnhart* 435 F.3d 926, 930 (C.A.8 (Ark.),2006).

The court believes that remand is necessary to allow the ALJ to either seek a Physical RFC from the Plaintiff's treating Gastroenterologist or obtain a consultive exam from a doctor within that specialty.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this March 5, 2013.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE